Good morning. Good morning, Your Honor. May it please the Court, my name is Kari Hong and I represent Appellant Saul Martinez. There are four reasons as to why the District Court has jurisdiction over my client's APA claim. The first is that there's no authority for the government's argument that the REAL ID Act strips jurisdiction from federal courts to consider APA claims. The government is arguing that my client's APA claim is a direct challenge to his deportation order. However, by design and definition, the APA claim focuses on agency actions and isn't a direct attack on any deportation order. Singh v. Gonzalez, which was erroneously and ironically cited by the government, recognizes this distinction. Singh held that removal orders have a very specific and narrow definition and are different from collateral challenges brought by non-citizens to removal orders. And the REAL ID Act does not disturb jurisdiction for collateral attacks. In Singh, the petitioner brought a habeas challenge raising IAC and the court held that was a collateral attack and therefore REAL ID did not strip jurisdiction. In my client's civil complaint... Doesn't that just the actual language of the REAL ID Act preclude this from happening? I think the INA now contains a provision entitled Exclusive Means of Review. Are you familiar with that? Is that 1252A5? Yes. Yes. 1252A5. Yes. Yes. And that's, I guess that's just not your read because it says notwithstanding any other provision of law including section 2241 of title 28 or any other habeas corpus provision and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal. And isn't that in essence what you're seeking here? Is an additional method of review of an order of removal? Well, Singh V. Gonzalez agrees with my reading that, citing to St. Cyr at the footnote at page 978, Singh makes it very clear that what exactly is an order removal applies only with respect to review of an order removal and that it simply cannot be the consolidation of any issue that's brought in for judicial review. And Singh V. Gonzalez asked this question already and answered it in my client's favor. What's important I think in the facts in my client's case... But doesn't there's a 2011 case, Singh v. Holder, that says the REAL-ID Act was thus intended to reinstate a system abbreviating the process of judicial review by effectively limiting all aliens to one bite of the apple with regard to challenging an order of removal. That's a 2011 case. So I think it's creative, what's happening here, but I'm just not sure you have good authority. I would submit actually in the 2011 case, the court actually held that the district court had jurisdiction over that habeas petition, which was a review over a costless bond hearing. It went on to apply that law to determine that collateral challenges are not subject to the REAL-ID jurisdiction stripping clause. What both Singh V. Gonzalez does and Morales Izquierdo, the two authorities in the Ninth Circuit, they look at the nature of the claim that the non-citizen is bringing. And Mr. Martinez's claim is that he's not challenging the basis for the adverse credibility finding of his asylum claim. But he's taking the same relief. Well that is no, actually, because it's okay for him to be removed? If he gets relief on his withholding and CAC claims, the deportation order remains fully intact. He is not contesting his deportability grounds. He's not contesting the validity of the deportation order. Rather, his claim is that the agency acted arbitrarily and unlawfully when considering the merits of his defense to deportation. Didn't these claims come all the way through and up to the Ninth Circuit, which denied relief? Those claims involved whether there's substantial evidence to support the IJ's adverse credibility finding. This APA claim is contending that the BIA has law and practice, which says that a false asylum application cannot be the basis to categorically deny a CAT and withholding case. That's supported by Ninth Circuit authority and BIA authority. And also under matter of PULA, a false asylum application is not a basis for an adverse credibility finding in the asylum context, but it can go to the matter of discretion. So what should Congress have said, beyond saying exclusive remedy? Well, what St. Cyr says is that it has to be expressed. It would have denied collateral attacks and direct attacks. Because it permits collateral attacks, and there's no bar against that, all the collateral attacks have been allowed to proceed. Now at page 4243 in the record, Mr. Martinez actually brings in the BIA decision, which supports this APA claim. In that case, it was an Indonesian man who filed a false asylum application, but the BIA correctly followed its law and practice and said that he's still permitted to seek CAT and withholding. And moreover, the concurrence recognized that if there's a strong showing of persecution, a false asylum application will not even defeat an asylum claim. Mr. Martinez is saying that the BIA is bound under the APA to lawfully apply this and cannot withhold the same treatment towards other people as it must towards him. So what do you do with the Second Circuit case, Delgado Quarantio? That completely followed, and factually in footnote 2, cited the Morales-Izquierdo case. That was not a real ID act, that was a zipper clause question. And on the zipper clause, what happened with Morales-Izquierdo is that the Ninth Circuit again looked at the nature of the claim. It said that it did not have jurisdiction over that claim because that petitioner was bringing a challenge to his inadmissibility waiver, and the court noted that there was a reinstatement order in the record. The court went so far to say if there wasn't a reinstatement order, we could actually see a viable challenge as a collateral attack. However, because there is a reinstatement order, and in essence he's trying to attack the validity of that reinstatement order, they're inextricably linked to the reinstatement order was the withholding of Morales. How about Estrada v. Holder, the Seventh Circuit case? Well, in that case, that involved a completely different situation in which there was a question of who had the proper forum to review the rescission of the LPR status. And there, there was both a pending an MTR, a motion to reopen for the BIA, and a district court action. Didn't the court say the complaint filed in the district court alleging an APA violation is the equivalent of a challenge to an order of removal? No, because the difference is in Estrada, what was notable is that there is still a live and pending action before the BIA. And the Seventh Circuit said the BIA has to decide this first. This can't go to the district court. What we have here is that Ms. Martinez is looking at how the BIA follows its own law and its own practice towards similarly situated individuals who have false asylum applications. His scope is beyond his own case. It's beyond matters of his own record. He's looking at how the agency conducts itself. So what's the relief you're seeking in the complaint? Well, we have three, three different accounts. In the first two, we're seeking permission for him to keep the deportation order intact and allow him to continue to apply for his CAT and his withholding claims, which would defer the existing deportation order. It would not disrupt it. The third complaint... And, and not be removed. Well, but that's only because he's eligible, if he can show that he has a valid defense. We're asking for the review of the merits of that question. If he can't show that he has the merits, he would, that the deportation order would remain. And you, and you're saying that's different from what you argued in your petition for review to the Ninth Circuit. Correct. The Ninth Circuit was solely about whether there was an adverse credibility determination. And in the, in the, in the first case before the Ninth Circuit, the Ninth Circuit panel said there was an inadequate basis, remanded it. The BIA reinstated that. It went back to the second panel, which then said that there was substantial evidence. That was determination. He's not seeking to re-litigate that at all. Rather, he's looking at how the, the laws and the rules need to be applied to him. And if, and you, can you cite any authority of any court that has allowed that to happen in the same circumstance? Well, no, I could not find any AP action, APA action, where this was permitted. However, there's no per se rule didn't, precluding jurisdiction over an APA action. And there's no court that says that he can't proceed when there's a collateral attack. I would submit that under Singh v. Gonzalez and Morales v. Izquierdo, Mr. Morales has distinguished his case adequately. And could you have raised this in your petition for review to the Ninth Circuit? Why not? Well, I could have, but... So haven't you waived it? No, because the, the, according to the Singh case, this was the same argument at, at page 7, 979, 979, and there the Ninth Circuit says that Singh may have an alternative avenue for relief, relief does not change our statutory analysis. That would be a res judicata claim, perhaps, but the government never raised it down below on that issue. That would be a claim preclusion, not an issue preclusion claim. And that has since been waived. What we have here, though, is that once again, the Singh doesn't look as to what could have been brought. It looks at is the nature of the claim, and because it's a collateral attack, jurisdiction still remains. The third reason why jurisdiction vests is that the, the government argued that other circuits are adopting the government's broad definition of removal order and broad application of the Real ID and Zipper Clause. However, where there, in the skirt... But you're saying that because he's seeking a deport, the, the holding off of deportation instead of removability, that makes the distinction. Yes, he's not contesting the validity of whether he's deportable. He conceded deportability, that was a proper finding by the IJ, he's not attempting to disturb it. But doesn't, uh, IRERA, the Illegal Immigration Reform and Immigrant, Immigrant Responsibility Act of 1996, eliminate the previous legal distinction between deportation, removal, and exclusion, and merged all into a broader category of removal? It did, however, because his case is brought before IRERA. IRERA, he still has a deportation order. So, so he, he, he's seeking to defer his deportation order, not a removal order. But it's still considered the same. For this particular case, yes. There's no, if he had been ordered removed, we would be seeking the same relief and the same laws and Okay. Did you want to reserve the balance of your time? Yes, Your Honor. Good morning, Your Honors. My name is Sarah Wilson. I'll be arguing on behalf of the government. May it please the court. We ask that this court affirm the district court's order granting. Could you raise your voice? Sure. I think I might be slightly too short for the microphone. Some of the courtrooms have an adjustable podium. We don't in this courtroom. It appears this one's too sturdy to be adjustable, Your Honor. Speak, speak right up. All right. Well, we ask that this court affirm the district court's order granting the government's motion to dismiss. We think that that. Tell us what's wrong with your opponent's argument. Well, there's several things wrong, Your Honor. I think that perhaps the most, most obvious defect is the jurisdictional defect. There's, it's clear that the court lacked jurisdiction to rule on these claims because those claims are so intimately tied to the claims that they made before the, the Board of Immigration, the Board of Immigration Appeals and this court on its petition for review. This court has said that the test in determining whether the challenge direct, whether a challenge is intertwined with the final order of removal such that the Real ID Act would apply is basically the question is does the challenge directly implicate that order of removal or alternatively is it independent of the merits of the petition for review? On what basis did he seek asylum review in the other proceeding? Well, I think that there was several bases that were raised, Your Honor. The first was that there was an adverse credibility issue as opposing counsel suggested. No, no, he said I'm in, I've been persecuted and I have a fear, a reasonable fear of future persecution based on what? The first time or the second time, Your Honor, there's two different claims made before the IJ. What about both? Well, the first claim, Your Honor, was regarding his membership in a political organization. He claims that he was in, the second claim was he claimed that he was persecuted on the basis of a sexual orientation. So, so the test essentially is whether or not the challenge would directly implicate that order of removal or whether it's so raised by the petition for review. And here, regardless of whether Mr. Martinez admits that those arguments were made before the board and before this court in its 2000, before its 2009 decision on the same issue, there are definitely issues that implicate the question of removability. And the court found that that final order of removal was, was valid and that he was not entitled to any additional forms of release, relief. I think that the Morales case perhaps speaks most directly on how this court should view the question because it how, how the court viewed a petition or an application for an adjustment of status. It determined that by a challenge to that application for adjustment of status, because it necessarily impugned the validity of that removal order, it should be said to be part of a challenge to that removal order. And the language that the court used, it relied heavily on the Supreme Court's discussions and and Fadi and Chadha and finding that a challenge to the final removal order includes challenges of discretionary, of discretionary relief that is ancillary to the order of deportation. And that's exactly what we have here, your honor. There's all of the challenges are related to requests for relief that are ancillary to the removal order. Those requests for withholding or an opportunity to reopen to explore the convention against torture relief. Um, so here there's really, here we essentially have an APA that is designed to, um, funnel these, these claims that should be channeled into the Court of Appeals through the Real ID Act and and allow a second bite at the apple in the district court. And further, your honor, I'd note that this isn't just a second bite at the apple. It would be for this court the fifth time that has ruled on it with the two petitions for the two PFRs, a motion to rehear through the panel and emotion to rehear on bonk. Um, it's clear that he's had his day in court and that there's a, there should be no further relief available to him. What distinguishes though this case from claims that are independent because I think that's what you're opposing. Council is arguing that this is independent of the determination of removal, such as the challenge to detention conditions. I mean, what, what distinguishes this case from those independent types of claims? Well, in all the cases where the Ninth Circuit has found that there was an independent, an independent challenge, those involve things that were very clearly distinct from the final order of removal. So the detention decision, whether or not an alien remains detained during the course of the proceedings doesn't necessarily indicate anything about the about his availability of relief or whether that order may ultimately become final. Additionally, the only other case that's been that's been discussed so far is that of, um, the the Ali case is cited in Mr Martinez's briefs that this discussion about whether, um, whether or not you can remove someone to a country that doesn't have, it doesn't have a government that that calls in the question of the idea of, of putting into effect that removal order, not whether that initial finding of removability was correct. So essentially, I don't know that we have to be really specific on where to draw the line because it's clear that all those cases involved things that were very independent from the order of removal. Whereas here we have something much more like Morales where the the relief sought is intimately tied to that final order of removal and is indeed something that could have been sought before the before the Board of Immigration Appeals. And in this in front of this court in the petition for review. And I asked the closing counsel this question. Let me frame it differently. Is there any authority, uh, that the government has identified or any Ninth Circuit or prohibiting the exercise of A. P. A. Jurisdiction? Is there any Ninth Circuit authority that would prohibit this kind of jurisdiction to review of proceeding to remove an alien from the United States in this manner? We don't have anything that in the in the published cases that are as direct as a challenge to the entitlement to withholding of removal or cat relief. But I think that the cases both Morales and the ones that discuss citizenship, I think that's a lawsuit. Um, that and there's an unpublished case called Oh, Asia. Both of those dealt with whether or not a citizenship claim could be reviewed in course of the, um, whether or not the challenge to the denial of a citizenship claim could be reviewed. And I think both of those come much closer because those air forms of relief that are intimately tied to that that order of removal. As far as the distinction between the A. P. A. Challenges versus the habeas challenges, I think I think it's clear that there is no distinction in the statute. And I think that the cases that we've cited in our brief also indicate that that protection would extend beyond the habeas context and specifically the Estrada case, I think, dealt with a claim that was made in the A. P. A. Context. And did you waive the rest? Judicata? No, Your Honor. Maybe I should talk about that for a few moments. Under the doctrine of race judicata, parties barred from re litigating claims that the that the final order of final judgment on the merits and and here we have an opportunity have a case where the Ninth Circuit in a published opinion has upheld the final order of removal and preclusively resolved all of the issues that are associated with the challenges to that order. Mr Martinez specifically challenged in his petition for review to this court the board's decision to decline to reopen proceedings so that he could pursue cat relief. That's exactly the same relief that's being sought in this case. There's essentially no difference in in the request and what is ultimately ultimately sought. The end game here, I guess, is how you put it. And and before in that P. F. R. He also argued that the board acted arbitrarily and failing to properly apply the law specifically talked. There was a discussion on whether it properly followed previous Ninth Circuit precedent. There's no reason that the matter of Pula arguments couldn't have been made at that time as well. Um, when determining whether whether or not these claims are identical for purposes of of claim preclusion, you look at whether the rights decided in the first action would be impaired by the second action. And I think that that is especially clear here where the where the Ninth Circuit essentially went through and said, we don't we don't believe any of these claims. We find that the lack of credibility in this case is striking and that there is no entitlement to reopening and there is no entitlement to any further relief for this court to question that decision would essentially nullify the decision that was previously made. A second second factor that you may look to is whether substantially the same evidence is presented in the two actions. Uh, the two are whether the same actions involve the same rights or whether they involve, uh, the common nucleus of operative fact. And perhaps the most obvious way to demonstrate this is to look at the briefs that were filed to this court in the Ninth Circuit. The fact sections that were submitted in the briefs before in this matter are essentially the same as the ones that were filed previously in the 2000 and nine case. It's clear that these operative facts are are almost completely overlapping the to the extent that this new decision that the that Mr Martinez raised first, I'd point out that it's a 2006 decision that happened previously to the court hearing arguments in the 2000 and nine case. It's also one that, um, it's also one that would fall within that same common nucleus of operative fact. There's no, there's no reason to believe that this makes it so different that the claim is essentially a new, um, I'd also point out that there was never, they never raised the matter of pool argument. So, uh, to the extent that this would, this be a supplement to that, this would just be a supplement to that argument, which they failed to make. So to the extent that this is a new argument, I, I don't think that that's enough to escape the binding effect of race judicata. Um, because those, those arguments, there's an obligation to make all of the arguments that relate to a common nucleus of operative fact. Unless your honors have any further questions. Judge Fletcher, do you have any questions? No, I don't. Thank you. On the claim preclusion, the government confuses claim preclusion with issue preclusion. Under claim preclusion, there has to be a final order on the same nucleus of facts. Mr Martinez is raising the fact that the B. I. A. treated his claim differently than the Indonesian applicant who also filed the false asylum application. That was not a part of the early litigations. It could not have been brought in the earlier litigation simply because there would be no way for the court to take judicial notice of how the B. I. A. Is treating other people. Um, as a result, the claim preclusion, um, issue does not foreclose Mr Martinez's relief before the court on the Morales Izquierdo case. The, the, this court recognizes that there is a very distinct and nuanced line drawing between a collateral attack and a direct attack on removal order in the very same decision in which it held the facts in the case supported a direct attack. It recognized that the exact same claim absent a reinstated statement order could have been a collateral attack and allowed to is, is, is erroneous because it's seeking a per se jurisdiction stripping rule which is not supported by the Ninth Circuit jurisdiction or any other jurisdiction. The may do and commissary cases from the 11th and Third Circuit support this case. In those cases, the aliens were saying that there is no removal order under which they were taken out of the country. The government raised the exact same tax attacks that it did in this case, which is that it's precluded under Real ID Act, it's precluded under the zipper clause, it's precluded under 1252 G. The 11th Circuit rejected each and every one of those because it said the question of whether there's an existence of removal order is, does not attack the validity of a removal order and therefore jurisdiction exists. Um, and so finally, I would submit that the claim is whether whether it's a direct attack or collateral attack because it's a collateral attack. The Real I. D. Act did not strip jurisdiction and he should be allowed to proceed in the district court on the merits of his A. P. A. Claim. Okay, Judge Fletcher, do you have any questions? No. Thank you very much. Thank you both for your presentations today. We're ready to docket. Oh, I'm sorry. This case is submitted now submitted.
judges: Fletcher, Hawkins, Murguia